## THOMAS HAVEN *versus* RICHARD LOW, Pla'ff in Review.

If a mortgage of personal property be void, because fraudulent against creditors, the original debt may still be recovered. Possession by the mortgagee of personal property is not necessary to the validity of the mortgage, as it is to the validity of a pawn.

The equity of redemption in a mortgage of personal property is not subject to attachment.

When the possession of personal property, after either a sale or a mortage of it, is retained by the former owner, that circumstance alone is not conclusive evidence of fraud.

This was replevin for a sloop, called the *Nymph.*

She was alleged to be the property of the plaintiff, and to have been taken from his possession, by the defendant, on the 24th of January, 1817. The defendant, in his avowry, admitted the taking, but averred, that the sloop was the property of one *Henry Nutter*, against whom a writ of attachment in favor of *John Nutter* was delivered to the de-

---

* 1 Greenl. Rep. 117, Riker et al. *vs.* Kelly et al.
† 1 Broderick & Bingham 506, Steward *vs.* Lombe.

fendant, as a deputy sheriff, for service, and by virtue of which writ he seized the sloop at the time before mentioned.

To this the plaintiff pleaded in bar, that the property of the sloop, when attached, was not in *Henry Nutter* ; and issue being joined on that point, the cause was tried here, September term, 1818.

At the trial, the parties agreed, that, in 1816, *Henry Nutter* commenced building the sloop, but being in want of funds, applied to the company of *Chamberlain & Swazey* for assistance ; that they advanced to him $409,43, and to secure the payment of it, caused the sloop, by the consent of said Henry, to be enrolled as their property, and on the 24th of August, 1816, effected an insurance on her to the amount of $600 ; C. & S., on the 24th of November, 1816, by a bill of sale, and also by the consent of said Henry, conveyed the sloop to the plaintiff, and at the same time assigned to him the policy of insurance ; and that the plaintiff paid C. & S. their demands against said Henry, and, having an account against him in favor of the plaintiff, executed to him a writing, in which the plaintiff engaged to re-convey to said Henry the sloop, on payment of the account and the sum advanced to C. & S.

The defendant then offered *Henry Nutter* as a witness, who, though objected to, was admitted.

He testified, that the sloop, till conveyed by C. & S. to the plaintiff, had always remained in his custody, and under his control ; that when conveyed to the plaintiff, she lay in Pascataqua river ; that no formal delivery of her was then made, and, soon after that time, Exeter river, where she had usually been employed, freezing up, he left the sloop at Sheafe's wharf, in Portsmouth, secured her by locks, and lodged the keys with one *B.*, from whom the plaintiff took them the latter part of January ; but whether before or after the attachment, he could not recollect.

On these facts, the court directed the jury, that if *Henry Nutter* retained possession of the sloop till after the attachment, as was probably the case, it did not furnish conclusive evidence of fraud in either of the conveyances ; but it was an indication of fraud, which would or would not avoid them

in respect to the creditors of said Henry, according as the jury believed it strengthened or impaired by the other facts in the case.

They were, also, directed, that the officer was not justified in seizing the sloop on account of any supposed equity of redemption.

A verdict was then found for the plaintiff, subject to the future opinion of the court on the competency of the witness and the directions to the jury.

*Haven* and *Mason*, counsel for the plaintiff.

*Ichabod Bartlett*, for the defendant.

WOODBURY, J. 1. We are satisfied, that the interest of *Henry Nutter*, in the present action, was balanced ; and, therefore, that he was properly admitted to testify.

Thus, if the action terminate in favor of the defendant, the value of the sloop will go towards the payment of the witnesses' debt to *John Nutter* ; but, on the other hand, the witness, at the same time, will become liable to pay from other funds the debt of the plaintiff.

Had the sloop been purchased, or mortgaged to the plaintiff, with views fraudulent in fact, the witness, after her loss, might not be liable to refund to him the consideration received. *Rob. Frauds* 591, 596.—*Hob.* 72.—1 *Dyer* 194, 296.—*Prec. in Ch.* 80.—4 *John. R.* 598.—*Sands et al. vs. Codwise et al.*

But no such views are imputable to the plaintiff; and whatever may have been the character of the sale to *Chamberlain* & *Swazey*, the design of the plaintiff was evidently to obtain only a collateral security for his own account, and for the sum advanced to *Chamberlain* & *Swazey*, to obtain from them the assignment of that security.

Hence, should the security fail as against the other creditors of the witness, yet the debt due to the plaintiff would remain in full force. It arose not *ex turpi causa*. It could not be merged by any thing merely collateral ; and there is no pretence of an actual payment on release.(1)

(1) 2 Salk. 522.

2. The next point is our direction to the jury, that the defendant was not justified in attaching the sloop on account of any supposed equity of redemption, which still belonged

Haven
vs.
Low.

(1) 15 Mass.
Rep. 480.

to *Henry Nutter.* At the trial, and in the argument, both parties have treated the contract between *Henry Nutter* and the plaintiff as a mortgage. Consequently, we shall so consider it, whatever doubt might otherwise arise (1), that the writing executed by the plaintiff did not prevent the sale itself from being absolute : or whatever doubts might exist, whether the sloop was not intended as a pawn, (2 *Caines Cases in Er.* 202.—*Corlelyou vs. Lansing.*—*Yelv.* 178 *n.,*) and, therefore, the conveyance void, because not accompanied by an actual delivery of the article pledged. *Justin. Inst. B.* 4.—*T.* 6 *S.* 7.—*Yelv.* 178 *n.*—15 *Mass. Rep.* 480.—6 *Mass. Rep.* 425, *Portland Bank vs. Stubbs et al.*

It may be considered, also, as a mortgage directly between *Henry Nutter* and the plaintiff ; because the assignment from *C. & S.* was by *Henry Nutter's* consent, and the obligation to re-convey ran to him alone.

Thus considered, the equity of redemption is not the subject of attachment on execution. Most of the cases in the books relate to pawns, which were long confounded with mortgages of personal estate ; but the principles which exempt the equity in both from seizure are similar. *Com. Di.* " *Execution*" *C.* 4.—5 *John.* 345.—*Wilkes et al. vs. Ferris.*—8 *East.* 467—*Tidd.* 917.\*

The analogy, also, to the equity of redemption in real estate is strong ; for that was not liable to execution, either at common law, or by the 29*th Charles II.*—*Powell on Mges.* 339.—1 *Vez. Jn.* 431.—*Lyster vs. Dolland.*—3 *Brown's Ch. Rep.* 480.—5 *B. et. Pul.* 461, *Metcalf et al. vs. Scholy et al.*—8 *East.* 467.

And it is now liable in different states only by express statute, or by implication from other statutes, recognizing the equity of redemption in real estate as a legal, rather than an equitable interest. 7 *Mass. Rep.* 139.—8 *ditto* 555.—9 *ditto* 103.—10 *John. Rep.* 481.—1 *Day. Rep.* 93.

3. The only remaining question is, whether the mortgage became void in consequence of the sloop's continuing in the possession of the mortgagor. It is well settled, that a mort-

---

\* 16 Mass. Rep. 320, Burlingame vs. Bell.

gage of personal property is valid as between the parties, though the property be not actually delivered to the mort-gagee. *5 John. Rep.* 261, 262.—8 *ditto* 97.—*2 Caine's Ca. in Er.* 202.—1 *Atk.* 165.—*Yelv.* 178 *note*, and authorities there collected.

But it is contended, by the defendant, that, in respect to the creditors of the mortgagor, such a transaction is *per se* fraudulent, and therefore void. There are authorities which countenance this position.(1) On the contrary, there are numerous other authorities which seem to hold, that if the possession of personal property, after either a sale or mortgage, be retained by the former owner, that circumstance alone is not conclusive evidence of fraud; but only *prima facie* evidence, and may therefore be rebutted or explained. *3 Coke* 81, *Twine's case.—Cowp.* 432, *Cardogan vs. Kennett.—2 Bos. et Pul.* 59, *Kidd vs. Rawlinson.—1 Lord Ray.*286, *Maggott vs. Mills,* 724.—6 *East* 257.—5 *D. & East* 424.—2 *Wm. Black.* 701.—1 *Burr.* 484, *Worsley et al. vs. Mathes et al.—3 Espin. Cases* 574.—5 *Espin. Cases* 25.—1 *Maule & Selw.* 251, *Leonard vs. Baker,* 335, *Muller et al. vs. Moss,* 354.—*Bull. N. P.* 258.—*Rob. Fraud. Conv.* 558.—4 *Taunton* 823, *Watkins vs. Birch et al.—1 John. Cases* 156.—5 *John. Rep.* 286.—8 *John. Rep.* 444.—12 *John. Rep.* 323.—15 *John. Rep.* 430.—5 *Taunt.* 512.—4 *Dallas* 208.—4 *Mass. Rep.* 661.—8 *Mass. Rep.* 257.—12 *Mass. Rep.* 131, 494.*

(1) 2 D. & E. 594, Edwards vs. Harbin.—1 Cranch 301, Hamilton vs. Russell.—9 Jo. Rep. 339, Sturtevant et al. vs. Ballard.

The difference between these two positions is highly important; because the first one devolves the question of fraud upon the court; the last one, upon the jury: the first one requires an opinion to be formed on a single circumstance, and admits no explanation; but the last one looks to the whole transaction, and admits every honest apology or extenuation.

But, as a general principle, fraud is a question of fact; or, at the farthest, is a mixed question of law and fact, where the court decide what circumstances and intents are com-

---

* 2 Barn. & Ald. 135, Robinson et al. vs. M'Donald et al.—248 Stringer vs. Murray et al.—1 Broderick & Bing. 506, Steward vs. Lolme.—19 John. Rep. 218, Ludlow vs. Hurd et al.—1 Gow. Ni. Pr. 33.—Armstrong et al. vs. Baldock.—3 Moore 11, Woodham et al. vs. Baldock.—17 John. Rep. 102, 334, Dickenson vs. Cook.

Haven
*vs.*
Low.

petent to prove fraud, but the jury decide, whether those circumstances and intents exist in any particular transaction. 1 *Wm. Bl.* 196.—*Foxcraft vs. Devonshire.*—1 *N. H. Rep.* 257.—*State vs. Little,* and authorities there cited.

Perhaps the only exceptions are cases, in which special statutes declare, that some act shall constitute fraud ; or where a fraudulent intent is inevitably inferable from some act, and both of these acts are admitted or proved.(1)   The act of possession, however, by the former owner, after a sale or mortgage, has never been declared fraudulent by express statute ; and it is not an act, which, from its nature, inevitably indicates fraud.  For, by this act, the general funds of the debtor are not diminished, nor the security of his creditors in any degree lessened.  Nor can any body suffer by it, unless a new credit is actually given, or an old one extended under a mistaken belief, that the property remains unsold.  But the few cases of this kind, which may happen, ought not to introduce so stern a rule as to make such conveyances void against every description of creditors. It is obvious, too, that the small number who, during such possession, may give a new or extend an old credit, are seldom inevitably misled and injured by that possession. They often receive express notice of the previous sale. Sometimes the notoriety of the sale has been such as incidentally to have reached them.   When these circumstances have not happened, this and every other class of creditors should, before giving credit or making an attachment, diligently inquire as to the title of the property in possession of the debtor.  In purchases of personal property the rule of *caveat emptor* applies, though the vendor may be in possession of it ; and, in levies, it is no harsher to apply a similar rule of *caveat creditor.*  We know it has been a subject of regret with some jurists, that in every country, as in some parts of Germany, possession should not always be deemed conclusive evidence of title.   4 *D. & E.* 640.—7 *& E.* 334.—*Lord Kaimes' Tracts* 85.

But such a rule would make a vast inroad upon our system ; and the frequent necessity of entrusting personal estate to other than the actual owners—to clerks, domes-

(1) 5 D. & E. 426, Estwick vs. Caillard.— 8 D. & E. 529, Nunn v. Wilsmore.

tics, factors, mechanics, and borrowers, forbids the application of the rule in any case whatever. When the creditor makes proper inquiry, he may ascertain that, in his particular case, the naked fact of possession after a sale is the only indication of fraud ; and, perhaps, that indication, weakened by clear evidence of a full consideration paid, of perfect publicity in the sale, and of little prior indebtedness in the vendor ; or he may find that indication strengthened by the converse of one or all of these circumstances.

Again, he may ascertain that there was an express condition in the sale itself for a loan of the property to the vendor ; and, considering the nature of the property, and the character and situation of the parties, that this condition ought to cast no suspicion of dishonesty on the transaction. Thus cases will occur to every one, where property might be honestly loaned for a time to the vendor from mere charity ; other cases for hire ; and others still for the property to be repaired, freighted, or manufactoried. In others, it may be left with the vendor from simple procrastination as to its removal ; in others, where the sale was a mortgage, from a common but erroneous opinion, that the mortgagee has no right to possession till condition broken, and in others, because the property is of so ponderous a nature, as to render a speedy removal inconvenient in the usual course of business. The length of time it was left or loaned, whether for hours, months, or years, would frequently much strengthen or weaken any presumption of fraud.

In fine, possession of property being retained by the vendor after a sale, is not *per se* a fraud ; but, in the language of Lord Mansfield, " being only evidence of fraud, may be explained."(1) The whole circumstances should be submitted to the jury, and " from all parts of the transaction taken together," (6 *East.* 265, *arguendo*) it should be determined, whether the contract of sale was or was not " fraudulent in the concoction of it." 5 *Es. Ca.* 25, *by Ld. Ellenborough.*

In other words, if this act of possession were not of an ambiguous character, fraud might always be inferred from it by the court ; but appearing in so " questionable a shape," as it often does, fraud, if accompanying it, is a presumption

(1)1 Burr. 484.

to be made by the jury from the whole case, and is not " determinable by any positive rule of law." *Phill. Ev. (Apx.* 15.)

*Judgment on the verdict.*