## FLINT *vs.* CLINTON COMPANY & TRUSTEE.

Under the act of July 5th, 1834, a corporation may assign all its property in trust for the payment of its debts.

A deed of assignment by a corporation commenced in these words: "The Clinton Company in Antrim, by I. W., their agent," and concluded as follows: "In witness whereof, they, the Clinton Company in Antrim, by their agent, have hereunto set their seal, and the said agent hath hereunto subscribed his name." —*Held*, that the deed was sufficient.

The agent of a corporation is the proper person to take the oath prescribed by the act, when property is assigned in trust for the payment of debts.

No reference need be made in such oath to property exempted from attachment, because a corporation can hold no property exempt from attachment.

*Semble* that an oath taken by an individual to an assignment of his property for the payment of his debts, need not except property exempt from attachment, although such be the form prescribed by the statute, because the exception is for the benefit of the debtor, and may be waived by him.

The form of the oath prescribed by the statute may be modified, so as to conform to the character of the assignor, wherever it may be done without changing its substance.

The act provides, that the person making an assignment shall make oath that *he* has placed in the hands of *his* assignee, all *his* property, of every description. The agent of a company made oath to an assignment, that the company had placed in the hands of the assignee all the property of every description belonging to said company—*Held*, that the oath was sufficient.

Where a deed is signed by the agent of a corporation, and the corporate seal is

affixed thereto, the presumption is, in the absence of evidence to the contrary, that the agent was duly authorized to make the conveyance.

Where a deed of assignment contained no provision for its execution by the assignee, and no covenant to be performed by him—*Held*, that he need not become a party thereto, by signing it.

In such case, if the assignee accept the trust, and proceed to execute it, he may be compelled to perform it, as effectually as if he had become a party to the deed, by signing it.

FOREIGN ATTACHMENT. The following facts appeared from the disclosure of the trustee.

On the 5th day of July, A. D. 1839, the Clinton Company, by their agent, Imla Wright, assigned to the trustee all the property of the corporation, in trust for the benefit of their creditors. The trustee took possession of the property, and paid therefrom sundry expenses that had been incurred by him, and certain taxes assessed upon the property of the corporation. The assignee did not execute the deed of assignment, by affixing his signature thereto, nor did it contain any provision for that purpose, nor any covenant on his part. The execution of the assignment on the part of the company was in the following form: " In witness whereof, they, the said Clinton Company in Antrim, by their agent, have hereunto set their seal, and the said agent hath hereunto subscribed his name."

It was provided by the assignment, that the assignee should, from the proceeds of the property, first pay " all such reasonable cost, charges and expenses, as he shall incur in and about the premises, and his reasonable charges for his services in and about the same."

The oath was taken by the agent in the following form : " That the Clinton Company in Antrim has placed and assigned, and the true intent of the aforesaid assignment was to place in the hands of the aforesaid assignee, all the property of every description belonging to said company."

*Farley*, for the plaintiff, took the following exceptions to the proceedings :

1. The assignment should have been executed by the

assignee.    This was a deed poll, and the property could not pass to the assignee, as against an attaching creditor.    *Brewer* vs. *Pitkin & Trustees*, 11 *Pick.* 298.

2. The deed is not executed in a proper manner.    The agent could not bind the company by such an execution.

3. The assignment contains a provision that the expenses of the assignment should first be paid out of the property ; whereas the act provides that all the debtor's property shall be assigned for the payment of his debts.

4. The oath is not in the form prescribed by law.    It does not follow the words of the statute, and property exempted from attachment is not excepted.

5. The company cannot assign their property for payment of debts.    It does not come within their corporate powers so to do.    The act has not in contemplation such artificial persons, but only individuals.

*Brown,* for the trustee.

GILCHRIST, J.    The first objection taken by the plaintiff to the proceedings under the assignment is, that the deed of assignment was not executed by the assignee.    But the deed contains no provision to that effect, nor any covenant that the assignee will execute the trust.    Nothing, therefore, is neglected which is required in the terms of the instrument.

The question, therefore, is, whether, in order that the assignment may be obligatory on the parties in interest, it be necessary that there should be written evidence of the assent of the trustee to the assignment, before a specific performance of the trust could be decreed.    But it is by no means necessary that the assent should be in writing, in order to enable the court to decree a specific performance of the trust.    If he had signed his name to the deed, he could have done nothing more towards executing the trust than he had done already.    He could only have taken possession of the property, and paid debts ; and these steps he has already

taken. He has proceeded far enough to bring himself within the jurisdiction of a court of chancery. It has been settled that where the trustee has interfered in the fulfilment of a trust, he binds himself to its performance, even where he is made a party to the deed, and has omitted to execute it. *Montfort* vs. *Cadogan*, 19 *Vesey* 635 ; *Jeremy on Equity Jurisdiction*, 138. Here he is not made a party to the deed, and there is nothing in the statute which renders it necessary that he should become so. He could now be compelled to execute the trust. He could be compelled to do no more, if he had signed the deed ; and we think the exception cannot be maintained.

The second exception relates to the mode of executing the deed. The Clinton Company, by their agent, set their seal to the deed, and the agent subscribed his name, and the name of the company, in this form : " Clinton Company, by their agent, Imla Wright."

We are at a loss to understand in what manner the mode of execution here adopted could be altered for the better. The seal of the company is affixed, and the agent has written his own name, and that of the company. In a late treatise on corporations, *Angell & Ames on Corp.* 159, it is stated that the technical mode of executing the deed of a corporation, is to conclude the instrument, which should be signed by some officer or agent, in the name of the corporation, with, " In testimony whereof the common seal of said corporation is hereunto affixed," and then to affix the seal. The deed commences thus : " Know all men, &c., that the Clinton Company in Antrim, by Imla Wright, their agent, duly authorized," &c. &c. The deed, upon its face, is regular. It purports to be a deed of the company, acting by their agent, with the seal of the company affixed, and signed by the agent. Now, all the presumptions are in favor of the regularity of these proceedings. Where the signature of the agent, who acts on behalf of the corporation, is proved, the seal affixed is presumed to be the seal of the corporation,

until the contrary is proved. *Mill Dam Foundry* vs. *Hovey*, 21 *Pick.* 417. So, where an instrument is formally executed by an agent, his authority to act is presumed. Where the treasurer of a corporation made an assignment of a mortgage, under the seal of the corporation, it is intimated by the court that, in the absence of evidence to the contrary, it will be presumed that the assignment was executed, and the seal of the corporation affixed, by proper authority. *Jackson* vs. *Campbell,* 5 *Wend.* 574 ; *Lovett* vs. *Steam Sawmill Asso.,* 6 *Paige* 54 ; *Bank of U. S.* vs. *Dandridge,* 12 *Wheat.* 76 ; *New-England Marine Ins. Co.* vs. *DeWolf,* 8 *Pick.* 56. The same presumptions are applicable to corporations as to private individuals. Persons acting publicly as officers of the corporation, are to be presumed rightfully in office ; acts done by the corporation which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter. *Bank of the United States* vs. *Dandridge,* 12 *Wheat.* 64. We think, therefore, that the deed was executed in proper form, and that, in the absence of evidence to the contrary, the authority of the agent to execute the deed, must be presumed.

The third objection is, that the assignment provides that the necessary expenses of the assignee shall be deducted from the property assigned. The act of July 5, 1834, provides, in substance, that *all* the estate of the debtor shall be distributed among the creditors. Here a certain portion of the estate is to be applied to the payment of the expenses of the assignment, so that *all* the estate will not be distributed among the creditors. But the statute must be so construed as to produce the beneficial effect intended by the legislature. The expenses of executing the assignment were never contemplated by the act to be a charge upon the assignee, nor is it reasonable that his services should be rendered gratuitously. Who would consent to serve as an assignee, if even his expenses could not be paid ? The statute could not be carried into effect, and no assignment of property would ever

be made, for none is valid unless it come within this act; for we have no right to presume that the assignee would act without compensation, or that the debtor would be able to find a friend willing to compensate the assignee. The debtor cannot, for all his property is conveyed. As this construction of the act appears to us unreasonable, and calculated to render the act nugatory, we have no hesitation in overruling the objection.

It is also said that corporations cannot assign their property in trust for the benefit of their creditors.

The object of the act is to provide for the equal distribution of property assigned for the benefit of creditors. For this purpose it enacts that no assignment for that purpose shall be valid unless it provide for such distribution. The evil to be remedied was the secret conveyance of the property of a debtor to one who was not a creditor, in fraud of the true creditors, or an inequitable preference of one creditor to others. The act distinctly recognizes the equity of an equal distribution of property among creditors. The property of corporations being subject to the payment of debts, the creditors of a corporation have as equitable a claim for an equal distribution of the property, as the creditors of an individual. Unless there be some principle applicable to corporations, which would prevent them from making a voluntary transfer of their property for the payment of their debts, they would seem to come within the operation of the act. But we are not aware that any such principle exists. More than three hundred and fifty years since, in the time of Littleton, any body politic, spiritual and ecclesiastical, might make leases for lives, or for years, and might convey their lands in tail, or in fee. They have, at common law, an incidental right to alien or dispose of their lands and chattels, unless restrained by their charters or by statute. *Co. Litt.* 44, *a.*; 300, *b.*; *Mayor of Colchester* vs. *Lowten*, 1 *Ves. & B.* 244. So, under their general authority to convey their lands, they have the power to mortgage them, which is only to convey

upon condition.   " It would be very extraordinary," says
Sutherland, J., in pronouncing the judgment of the court
in *Jackson* vs. *Brown*, 5 *Wend.* 549, " if any corporation
had not the power to appropriate its property to the payment
or security of its honest debts."    And in several of the states
the power of corporations to assign their property in trust for
the payment of their debts, has been recognized.    *State* vs.
*Bank of Maryland*, 6 *Gill & Johns.* 205 ; *Union Bank of
Tennessee* vs. *Elliott & a., Ibid* 363 ; *Warner* vs. *Mower
& a.*, 11 *Vermont* 385 ; *Binney's Case*, 2 *Bland. Chan. R.*
142 ; and also by the supreme court of the U. S. in the case
of *Lennox & a.* vs. *Roberts*, 2 *Wheat.* 373.    We think,
therefore, that this power is not inconsistent with the gen-
eral purposes of a corporation, and that it may be exercised
in this state ; unless, under the last exception taken by the
plaintiff, the form of the oath prescribed by the act necessa-
rily excludes corporations and their creditors from taking
advantage of its provisions.

The second section enacts that no assignment shall be
valid until the *person* making it shall have made oath that
*he* has assigned all *his* property, of every description, except
such as is exempted from attachment and execution.

It would hardly be contended that this section is to be
construed according to the literal meaning of every word.
If so, a female could not assign her property, because she
could not take the oath in the words of the statute.    But
who can doubt that a female is comprehended within the
meaning of the act ?    A female is a *person*, and the form of
the oath must be modified so as to conform to the character
of the assignor, if this may be done without changing its
substance.    So it is with a corporation, which is a *person*
known to the law, the creature of common law and of stat-
ute, with rights and liabilities as well defined as those of
individuals.    It would be the merest trifling with lan-
guage, to hold that no person could assign property under
this act, unless such person could make oath that *he* had

assigned *his* property.   A corporation being an intangible being, and existing only in contemplation of law, and not being a moral agent, subject to moral obligation, cannot take an oath, nor perform any other act except through its agents. But the agent is in a situation to be acquainted with the condition of the corporation, and to know of what its property consists.   He is punishable for swearing falsely in this respect ; and thus the security of an oath, prescribed by the statute, is provided in this, as in other cases.

It is said that the oath is invalid, because no allusion is made to property exempted from attachment and execution. As the exemption from attachment is for the benefit of the debtor, it would seem, on principle, that he might undoubtedly waive it. *Hanover* vs. *Weare,* 2 *N. H. Rep.* 131 ; *Page* vs. *Pendergast,* 2 *N. H. Rep.* 235.   He may assign even this property, if he choose, for the payment of the debts, as he may sell it.   But there is another answer to this position.   This provision in the oath was intended only for such persons as could hold property exempt from attachment. Corporations cannot so hold any property, but it is all subject to attachment.   The clause, then, if introduced, would have been perfectly useless, and inapplicable to the case of a corporation, and we can see no reason for holding that the omission of these words renders the proceedings invalid.

The judgment of the court, therefore, is, that the exceptions be overruled, and the

*Trustee discharged.*