## BARKER & a. *vs.* HALL & *Trustee.*

A mortgage by a debtor of all his property, to secure the payment of a portion of his debts, leaving others unprovided for, is not an assignment within the meaning of the statute of July 5, 1834, entitled " an act for the equal distribution of property assigned for the benefit of creditors."

Neither the continuing possession of the goods mortgaged, nor even a sale of a portion of them, after the execution of the mortgage by the mortgager, with the assent of the mortgagee, is conclusive evidence of fraud, rendering the mortgage void as against creditors; but is, at most, evidence of fraud, proper to be submitted to the consideration of the jury.

A creditor received a mortgage of a debtor of all his property, to secure a debt due to him, and permitted him to retain possession of the property after the execution of the mortgage ; and the mortgager sold a portion of the property, with the assent of the mortgagee, and applied the proceeds to his benefit, and the remainder of the property came to the possession of the mortgagee.—*Held,* that the mortgage was not an assignment within the meaning of the act above referred to, and that the same was valid, and that the mortgagee was not liable as the trustee of the mortgager.

FOREIGN ATTACHMENT. The case was submitted upon the disclosure of the trustee.

WOODS, J. The questions submitted for our decision in this case, arise upon the disclosure of the trustee, and the facts upon which they arise, will sufficiently appear in the opinion.

The trustee disclosed, that, prior to the commencement of this action, the principal defendant was indebted to him, and

also to Joshua H. Hall and Timothy Hall, and divers other creditors; that on October 30, 1839, the principal defendant procured said Joshua H. and Timothy Hall to assume the payment and discharge of her liabilities to sundry specified creditors, to whom they also were liable jointly or severally, either as her endorsers or sureties. For the amount of the sums thus contracted to be paid by them, and in payment and discharge of her indebtedness to them, and to each of them she executed to them her promissory note, which was by them endorsed to the trustee, and thereupon the principal defendant executed to the trustee a mortgage of all the goods then in the store occupied by her in Portsmouth, to secure the payment of said note, together with the sum of her indebtedness to the trustee. Upon the assignment of said note to the trustee, he agreed with said J. H. and T. Hall to apply the proceeds of said goods, after paying the debt due to himself, to the payment and discharge, first, of said debts which said J. H. and T. Hall had agreed to pay for the principal defendant, and then to the payment of the sum of the indebtedness of the principal defendant to said J. H. and T. Hall, which was discharged upon the giving of the aforesaid note to them. It further appeared by the disclosure, that the mortgage embraced all the property of the principal defendant, excepting possibly some small debts due to her; and that the property, after the execution of the mortgage, remained in the possession of the mortgager, and a portion of the same was sold by her, with the assent of the mortgagee, and the proceeds applied agreeably to the stipulations of the contract entered into between the mortgagee and said J. H. and T. Hall. Prior to the commencement of this suit a portion of the property came into the possession of the plaintiff. Upon these facts the plaintiff contended, that, for the reasons which will sufficiently appear in the opinion, the defendant is chargeable as trustee.

1. The first ground relied upon is, that the mortgage was in fact merely a general assignment, and, as such, came within

the operation of the statute of this state, entitled "an act for the equal distribution of property assigned for the benefit of creditors," passed July 5, 1834, (*N. H. Laws, page* 145) the first section of which provides, that "no assignment made for the benefit of creditors of any debtor so assigning his property, shall be valid in law, except the same shall provide for an equal distribution of all real, mixed or personal estate, among the several creditors of the person or persons making such assignment, in equal proportion, according to their respective claims." And by the second section of said act it is provided, that "no assignment shall be valid, and have effect, until the person or persons making such assignment shall have previously made oath that he has placed and assigned, and the true intention of his assignment was, to place in the hands of his assignees, all his property of every description, except, &c., to be divided among their creditors in proportion to their respective demands." And it is contended, that, inasmuch as the mortgage is not made in accordance with the requirements of the provisions of said act, the same is for that reason wholly invalid.

It was decided, in the case of the *Meredith Manufacturing Company* vs. *Smith and Trustee,* (8 *N. H. Rep.* 347,) that an assignment of any particular portion of his property by a debtor, for the payment of some particular debt, is not prohibited by the provisions of the statute referred to. "Such a prohibition," says Mr. Chief Justice Richardson, in delivering the judgment of the court, "would be absurd, so long as any creditor or creditors are permitted, as they are by our laws, to attach the property of the debtor, and thus apply it to the payment of their debts, without the consent of the debtor."

And in *Low* vs. *Wyman and Trustee,* (8 *N. H. Rep.* 536,) it was held, that the pledge by a debtor of all his property, for the payment of a particular debt, is not an assignment within the intent and meaning of the statute to which we have referred.

And if it be thus held properly, that a pledge of a part, or even of the whole of a debtor's property, for the security of a particular debt, is valid, we think it would be difficult to assign a sound and sufficient reason why a mortgage in such case should not be equally valid.

And we see no reason to question the propriety or soundness of the decisions upon this subject to which we have referred.

Prior to the passage of the act of July 5, 1834, a practice prevailed to a very considerable extent, sanctioned by a judicial decision, (*Haven & al.* vs. *Richardson,* 5 *N. H .Rep.* 113,) in case a debtor found himself to be in failing circumstances, to make what purported to be a general assignment to trustees, of all his property, for the benefit of his creditors generally, who would become parties to the assignment and assent to its terms, and the debtor preferred in that way whom he would, and annexed such terms and conditions to the assignment as he pleased, and the creditors were obliged to take such an interest in the property assigned as the debtor might, according to his pleasure, determine, and thereupon to discharge their whole claims ; or, if they failed or refused to become parties to the assignment, in such case they took no share in the property assigned, and were, so far as the property was concerned, entirely remediless. This was a proceeding under which great injustice and fraud in many instances were found to be practiced, by the preference of friends, and the concealment of property ; and to remedy the evil, the act of July 5, 1834, was passed, rendering all general assignments, giving preferences, or not embracing all the property of the debtor, agreeably to the import of the assignment, wholly inoperative and void. And the design of the statute goes no farther than to make void that class of assignments. It was not designed to affect other classes of conveyances, which were not accompanied with any such mischiefs as were found to attend general assignments of the class mentioned. It cannot be reasonably supposed, that it

was intended to operate beyond the necessity of the case, or to extend farther than to furnish a remedy for the evil which was found to exist. It was not its purpose to do away with all preferences whatsoever among creditors, by the voluntary act of their debtors. So great a change in the law as that, could not have been contemplated. There was no call for it, and it would be wholly inconsistent with the policy of our laws, and with all usage and practice under them. And, indeed, that would be extremely unreasonable legislation, which would defeat all conveyances by the voluntary act of the debtor, having for their object the fair security of a particular debt, and thereby giving preference, while at the same time it authorized the creditor himself to obtain security and preference compulsorily, by force of attachment on legal process.

2. It is further urged, that the mortgage was fraudulent and void, as against the creditors of the mortgager, for the reason that the possession of the goods was retained by the mortgager after the execution of the mortgage, and that the mortgager made sale of some portion of the goods, with the assent of the mortgagee.

But, aside from statute provisions, possession of the property mortgaged by the mortgagee is not essential to the validity of the mortgage. This point was decided in the case of *Haven* vs. *Low*, (2 *N. H. Rep.* 13,) and the same doctrine is recognized in *Ash* vs. *Savage*, (5 *do.* 545,) and *Hoit* vs. *Remick*, (11 *do.* 285 ;) and the decisions in *Haven* vs. *Low*, and *Ash* vs. *Savage*, were made before the passage of the statute providing for the registration of mortgages of personal property.

But, if the law had been held otherwise, prior to the passage of said statute, still, there could now be no doubt, since the passage of the act of June 22, 1832, providing for the registration of such mortgages, that possession by the mortgagee is not essential to the validity of a mortgage which is recorded. By the fair intendment of the statute, the regis-

tration must, in such a state of the law, have been regarded as a substitution for the delivery of possession. *Shurtleff* vs. *Willard*, 19 *Pick.* 202 ; *Bullock* vs. *Williams*, 16 *Pick.* 33.

Prior to the passage of said act, the continuing possession of the mortgager was not a fraud in law, or conclusive evidence of fraud, but was at most, under some circumstances, evidence of fraud. It was not a fact conclusively establishing the fraud. *Ash* vs. *Savage*, before cited. See, also, *Hoit* vs. *Remick*, before referred to.

In Massachusetts, where the statute regulating the transfer of personal property by mortgage is similar in its provisions to that in force in this state, it has been decided that " whether the mortgaged goods continue to be holden under the mortgage, or become absolutely the property of the mortgagee, the possession of the mortgager can at most be but evidence of fraud." *Shurtleff* vs. *Willard*, before cited.

And on the other branch of this second exception, we are of the opinion that the mere fact that the mortgager made sale of a portion of the goods mortgaged, after its execution, with the assent of the mortgagee, and applied the proceeds agreeably to the terms of the agreement entered into between the mortgagee and J. H. and T. Hall, can, at most, be regarded as evidence of fraud, proper to be submitted to a jury, but not as a fact conclusively establishing the existence of fraud, in the transfer of the property to the mortgagee.

3. It is further contended, that the mortgage is invalid, for the reason that it was made to secure a debt different from that described in the mortgage. How the law may be upon a state of facts such as is assumed, it is not now necessary to enquire or decide. No such fact exists in this case.

The claims for security of which the mortgage was given in fact, as appears by the disclosure, were the account of the mortgagee against the mortgager, and the promissory note executed by the mortgager to J. H. and T. Hall, which was by them endorsed and transferred upon a good consideration to the mortgagee, on October 30, 1839, as before stated.

And those are the claims described in the condition of said mortgage, according to the copy forming a part of the disclosure of the trustee. The mortgage, then, was given to secure precisely what it purported to secure, and precisely what it was designed to secure.

The last exception to the validity of the mortgage is not, therefore, warranted by the facts contained in the disclosure.

Upon the whole, we see no ground upon which the mortgage can be holden to be invalid, or the trustee be found chargeable upon his disclosure.

The judgment of the court, therefore, is, that the trustee must be discharged.

*Odell*, for the plaintiff.

*Bartlett & Emery*, for the trustee.