## DANFORTH & a. v. DENNY & TRUSTEE.

The delivery by a debtor to a creditor of all his attachable personal property, excepting a portion of it previously mortgaged to another, accompanied by an agreement of the parties that the same should be holden, and the avails thereof applied, first, in satisfaction of the debt due to said creditor, and the remainder in payment of certain specified debts due from the debtor to sundry other persons, assented to by all the parties contemplated by it, is a valid pledge or assignment at common law, and it is not affected by the provisions of chap. 134 of the Revised Statutes, relating to assignments for the benefit of creditors.

Where goods were pledged by a debtor to a creditor for the security and payment of his debt, and also for the security and payment of the debts of certain other specified creditors, and the same were afterwards attached upon a writ in favor of another creditor, subject to the lien created by the pledge, and were also attached upon a writ in favor of the pledgee, for the purpose of further securing his debt, but with no intention of affecting the pledge, and the pledgee continued in possession of the goods, the officer claiming only what interest might be attached and holden subject to said lien; it was *held*, that the lien of the pledgee was not thereby waived or defeated.

Where a debtor delivered his goods in pledge to a creditor, for the security and

payment of his debt, and also of the claims of sundry other specified creditors, and a portion of said creditors assented to the pledge at the time, and afterwards the remainder of said specified creditors assented to said pledge, and after said assent certain other creditors commenced an action against the pledger *as principal, and the pledgee as trustee, and the goods* were attached thereon, and the writ was duly served on said trustee, and the goods were afterwards sold by the agreement of the pledger and pledgee and of the first attaching creditor, subject to said pledge, and by their assent the avails were to be applied in payment of the debts of all said specified creditors, and the plaintiffs in said trustee action *also assented to the sale of the goods, and to* the application of the avails in discharge of the debts of all the said creditors, excepting those who assented to the pledge after the first attachment, as before mentioned ; it was *held,* that the assent of said creditors, after the first attachment, was as effectual in establishing their rights to the pledge, as *against the creditors in the trustee suit,* as if it had been given at the date of the pledge, and that the trustee was not liable, as such, for any part of the avails of said goods required to discharge said pledge.

FOREIGN ATTACHMENT. In answer to the usual interrogatory propounded to the trustee, the trustee disclosed as follows, namely :

" On the sixth day of May, 1850, the defendant turned out and delivered to me all his attachable personal property excepting a portion of the same which he had before that time mortgaged to Alonzo Winkley, and I took possession of the same, as security, in the first place, for a demand which I had against him in full, and after that was paid, for the payment of certain other debts, he, the said Denny, said he was owing to others, a schedule of which and the amount of which he then delivered to me; and I then agreed to pay the same as far as the avails of the property would go, in proportion to the amount of their respective claims, provided *I should hold* said property. Afterwards, and before the service of the plaintiff's trustee writ upon me, I saw the creditors of the defendant, named in said schedule, and agreed with them to pay them as aforesaid, and they agreed to accept of the same.

Having some fears as to my title to the property delivered to me as aforesaid, notwithstanding I had the property in my possession, and which remained in my possession

until it was sold by the sheriff, I procured a writ on my own demand, including the demands I had agreed to pay as aforesaid, and that writ was duly served, and the same property attached on the same. After this, and before the sale of the property, the plaintiffs' writ was served on me. After the plaintiffs' writ was served on me, the property was sold by the sheriff by consent of all the parties, the plaintiffs in this action giving their consent.

The sales of the property turned out to me amount-
ed to the sum of ........................... $143 03

The expenses of the sale and writs amount-
ed to............................... $16 41

My own personal debt was............. 68 41
                                        ——————  $84 82

Leaving a balance of the avails of the sale which
came into my hands from the sheriff, of......... $58 21
which is less than the amount of the claims
against the defendant which I had agreed to pay
as aforesaid, which was..................... $62 52

I further say that the property mortgaged to Alonzo Winkley, as above stated, was, as I understood, attached by said Winkley and sold for about $94, and the money paid to Winkley. Whether Winkley's action was entered or not I cannot say; my action was never entered.

At the time of the sale of the property in my possession, before mentioned, I gave my consent to it, only upon the condition that the property should be sold upon the pledge of the same to me, according to the terms upon which said property was turned out and pledged to me as aforesaid; that is, that the avails of the sale should be applied in full discharge, first, of my private claim aforesaid, and then be applied upon the other claims which I held for others, and which I had agreed with Denny, Winkley and others, May 6, 1850, to pay *pro rata*, so far as the balance of said avails,

after paying my own claim, would go, provided I held the property. I objected at the time to the selling of the property unless it was upon the pledge to me, to be applied as aforesaid. The sale was in fact made by the officer, Eldridge, upon said pledge, on said terms and conditions, and not on the writs, as I understood at the time and now understand and believe.

C. E. Danforth, the active partner of the firm who are plaintiffs in this suit, was present at the time of said sale, and assented to its being sold upon said pledge on said terms and conditions, with a reservation on his part which will be hereinafter mentioned.

The sum due from Denny to other persons than myself, and for whom I held the property in trust as before stated, was made up of two classes of items, namely :

I. The claims of those who had assented, and with whom I had agreed that I should hold said property as above, to secure their claims, before or at the time of the agreement with Denny, Winkley and others, May 6, 1850.

II. The claims of those who had not knowledge of said arrangement, and had not assented to it at that time, but did afterwards assent, before the trustee process in this suit was served on me.

At the time of the sale, Danforth consented that I should hold the avails to apply on my own claim in full, and apply *pro rata* on those I held for others, where I had agreed with and made promises to the owners so to do, at the time it was attached by Winkley, May 6, 1850, but he objected to any of the avails being applied on those of others where at said time I had made no such promise and agreement with the claimants.

I had agreed with *all* those persons to hold the property for them as aforesaid, before the trustee process of Danforth & Co. was served on me.

The exact date of the writ in my favor, upon which the pledged property was attached, I do not remember. It was

on the 8th, 9th or 10th day of May, 1850, or thereabouts; as to the time I am not certain, but believe it was on the 10th. The officer had already attached the property on another writ, then in his hands, and mine was given him by my attorney on the day it was made. He took the writ and retained it. I know nothing further about the attachment. The writ was not entered in court, nor was any thing more done about it to my knowledge. It was my expectation that the officer would attach the property.

I caused the suit to be commenced with the purpose of making my security more safe. I was advised by my counsel so to do, and that it would not interfere with my pledge. I had at no time a purpose of abandoning my lien by the pledge, but at all times meant to retain it, and always refused to give it up.

I have stated that the property was attached on my writ. It was my understanding and expectation at the time, that it would be and was attached, but I do not recollect whether any definite directions to that effect were given by me or not. I understand, since I have been engaged in giving this disclosure, from the officer, that he did attach the property and return it on my writ, which I believe to be true, and that it probably was by my direction, or what was equivalent to the same."

[The affidavit of Watson K. Eldridge, the officer who attached the property and afterwards sold it, was, by the trustee, made a part of his disclosure, the same being verified by the trustee by his statement, under oath, of his belief of the facts therein contained.]

Watson K. Eldridge testified as follows, namely:

" The property of Samuel Denny, of Plainfield, in the county of Sullivan, was sold by me on the 15th day of June, 1850, subject to a mortgage to Alonzo Winkley, and also to a mortgage or pledge or lien to John S. Blanchard, from said Denny. This pledge was given to said Blanchard, to secure his claim against said Denny, and also the claims

of others against said Denny, for which claimants said Blanchard was agent. On the 6th day of May, 1850, I went to said Plainfield to attach property of said Denny, and found it under a keeper, by said Blanchard's orders, on the ground that said property was pledged to said Blanchard by said Denny, as above stated. Said pledge was made and said property was in said Blanchard's house, in his possession, prior to my attaching the same. It was agreed by Alonzo Winkley, for whom I was to attach the property, that said property should remain in said Blanchard's possession subject to the pledge as above stated. At the time of the service of said Winkley's writ, it was also agreed by said Winkley, Blanchard and Denny, that the said property should be sold at public auction, on the 15th day of June, 1850, subject to a mortgage from said Denny to said Winkley, and also subject to said pledge or lien of said Blanchard; and the property was so sold, and said Blanchard received the avails of the sale, excepting the avails of the property mortgaged to said Winkley. On the 20th day of May, 1850, I attached said property and trusteed said Blanchard. Said last attachment was made in favor of C. E. Danforth & Co., of Hanover. On the 15th day of June, 1850, I sold said property, and said Danforth & Co. then consented that the property should be sold in accordance with the agreement made by said Denny, Blanchard and Winkley, on the 6th day of May, 1850, and that the proceeds of the sale should be applied in full discharge of said Blanchard's private claim, and also of all other claims which said Blanchard had agreed with said Denny and said Winkley and other claimants to pay, prior to said Winkley's attachment. But said Danforth & Co. objected to said Blanchard paying certain other claims where the parties were not present at the time of the above agreement between said Blanchard and Denny."

The questions arising upon the foregoing disclosure were

reserved and assigned, by the presiding justice of the common pleas, to this court, for decision.

*Daniel Blaisdell,* for the plaintiff.

I. The trustee lost his lien by making an attachment of the property pledged. *Jacobs* v. *Latour,* 5 Bing. 130; *Legg* v. *Willard,* 17 Pick. 140; *Whitaker* v. *Sumner,* 20 Pick. 399.

When he caused the property to be attached on the writ in his own favor, founded on the claims to secure which it was pledged to him, he relinquished his right to hold it by virtue of the pledge. He then held it as the servant of the officer. He could not hold it at the same time by virtue of the pledge and also by virtue of the attachment. By causing the attachment to be made, he elected to hold by that, and the lien under the pledge was lost—much more when the officer proceeded and sold the property, without any notice that the attachment had been withdrawn, or without its having been withdrawn.

Whatever may have been the intention of the trustee as to retaining his lien under the pledge, the law transferred the possession to the officer when he made the attachment by Blanchard's direction. *Jacobs* v. *Latour,* 5 Bing. 130.

Whatever may have been the agreement or understanding at the time of the sale—and there was evidently some misapprehension—it was based upon the idea that the legal proceeding already commenced should be carried on to judgment. It was thus that the amount of the several claims was to be ascertained. It was the intention of the parties to rely upon their legal rights.

II. If the lien under the pledge had not been lost by the attachment, Blanchard would not be entitled to hold the property for the benefit of Denny's creditors.

1st. Because there was no consideration for the promise. It appears from the disclosure that the arrangement, whatever it was, with Daniel Bryant, son of John Bryant, was

made after the property had been placed by Denny in the trustee's possession; and although there had been conversation between said trustee and Osgood True and George W. Morgan relative to securing their claims, previous to the delivery of the property to the trustee, yet the fair inference from the trustee's disclosure is, that the confirmation of the arrangement was made after the delivery. There can be no pretence for holding the property or funds for the benefit of the remaining creditors. *French* v. *Lovejoy & Trustee*, 12 N. H. Rep. 458.

2d. Because the promise was void by the statute of frauds, which requires the special promise to answer for the debt, default or miscarriage of another person, to be in writing, and signed by the party to be charged.

Whatever promises or agreements were made by Blanchard with Denny or the creditors, were void. None of them were in writing.

*H. Hibbard* and *E. L. Cushing*, for the trustee.

I. The lien or pledge of the trustee was not lost or vitiated by his attachment for himself and others, *he still insisting upon his pledge.* *Whitaker* v. *Sumner*, 20 Pick. 399; *Townsend* v. *Newell*, 14 Pick. 334, 335 and 336.

*Townsend* v. *Newell* is directly to this point, and more was there done than in this case, and it "was permitted to prove by parol evidence that the goods were attached by him subject to the lien, although no mention of the lien was made in the receipt taken by him, nor in his return."

II. On the principle maintained in *Leeds* v. *Sayward & Trustee*, 6 N. H. Rep. 83, all bona fide creditors who had become parties to the agreement that Blanchard should hold the property as a pledge for payment of their debts, with the assent of Denny, before the commencement of this trustee process, acquired a lien upon the property that must first be discharged before Blanchard could be adjudged trustee for any surplus. It was perfectly competent for Blan-

chard to agree to hold the property as the agent or servant of other creditors as security for their claims, subject to his lien, *at their request and with the assent of Denny.* Blanchard must be considered the agent or servant of the other creditors, and as holding the property for them, subject to his own lien. *French* v. *Lovejoy & Trustee,* 12 N. H. Rep. 458 ; *Boardman* v. *Cushing & Trustee,* 12 N. H. Rep. 105.

III. The statute of frauds does not apply to a promise to hold property as a pledge for creditors, with the debtor's and creditors' consent and agreement. Nor does the law against assignments have any application to this case.

IV. It is not denied but that the arrangement between Denny, his creditors and Blanchard, was fully completed before this action was commenced ; and that the plaintiffs in this action assented to the sale on the pledge. If the pledge was good as to any one of the creditors who had requested Blanchard to hold the property for his benefit, it was good as to all who had entered into the arrangement before this action was commenced.

WOODS, J. The property in question was, on the 6th day of May, 1850, delivered to the trustee, as security, in the first place, for a demand which he held against the principal debtor, and after that for the payment of certain other specified debts of said principal debtor, of which a schedule was made, and the amount of which appeared upon the schedule ; and it was then agreed between the trustee and the principal debtor that the trustee should pay said debts to the extent of the avails of the property, provided he should be allowed to hold the property for that purpose. Before the service of the writ in this case, the trustee saw the creditors named in the schedule, and agreed with them to pay them according to the arrangement made by him with the principal debtor, and the creditors agreed to accept payment in that way.

Blanchard, of course, had authority to receive the goods in

pledge on his own behalf, and he received them also on be-half of the other creditors named in the schedule, with the assent of a portion of them given at the time, and with the subsequent sanction and ratification of the others. This arrangement between the owner of the property and his creditors, by which the property was to be holden by Blanch-ard for the benefit of himself and the other creditors named in the schedule, and the avails of which were to be applied in discharge of those claims, so far as they would go, was unquestionably, by the principles of the common law, a valid contract, and gave those creditors an equitable interest in the property which the court may well protect. The trans-action constituted a valid pledge or assignment of the goods for the security and payment of the debts specified. *Mere-dith Manuf. Co.* v. *Smith,* 8 N. H. Rep. 348. Nor was the contract or assignment under consideration rendered invalid by virtue of chapter 134 of the Revised Statutes, which provides that " no assignment for the benefit of credi-tors shall be valid unless it provides for the equal distribu-tion of all the estate, rights, and credits of the debtor among all his creditors, in equal proportion to their respective claims." A construction has been given to the act of July 5, 1834, which was in its provisions similar to that now in force and before cited. *Meredith Manuf. Co.* v. *Smith & Trustees,* 8 N. H. Rep. 347. It was there decided that " it was not the intention of the legislature to prohibit a debtor from assigning any particular property he might possess, for the purpose of paying any particular debt or debts that he might owe."

And in *Low* v. *Wyman & Trustees,* 8 N. H. Rep. 536, it was decided that a pledge of all a man's property for the payment of a particular debt, is not within the statute of July 5, 1834. The court there say : " The statute could never have been intended to embrace a mortgage or pledge of any or all of a man's property, for the security of a particular debt. A debtor has an undoubted right to convey all his property

to one of his creditors in satisfaction of his debt. And if he can convey all his property in satisfaction of a particular debt, there seems to be no sound reason why he should not be permitted to pledge all his property to secure the payment of such debt."

In *Baker* v. *Hall & Trustee*, 13 N. H. Rep. 298, it was decided that a mortgage by a debtor of all his property to secure the payment of a portion of his debts, leaving others unprovided for, is not an assignment within the meaning of the statute of July 5, 1834, entitled " An act for the equal distribution of property assigned for the benefit of creditors."

We think, therefore, that it is quite clear that at the date of the pledge, or assignment, or security in this case, the trustee, in his own behalf and for and in behalf of the creditors specified in the schedule, had a valid lien upon the property in question, and full authority to appropriate it to the discharge of their claims against the principal debtor. The full assent of all the creditors for whose benefit the property was placed in Blanchard's hands, was given before the trustee process was served; and the aggregate amount of the claims secured, was greater than the value of the property pledged, and more than the amount that was realized upon the sale of it.

It is contended, however, by the plaintiff, that by the subsequent transactions disclosed, the lien of the trustee, and of those for whom he held it, upon the property created by the pledge or assignment, was waived and lost.

The property placed in the trustee's hands was in no wise interfered with, nor the lien thereon lost, by reason of the attachment made on the writ in favor of Winkley, that being made expressly subject to the lien or pledge to the trustee and the other creditors, and the possession of Blanchard was in no wise disturbed thereby. Blanchard claimed the lien, and he was allowed to retain the possession under the claim, and the officer took only what he might, subject to

the rights thus asserted and maintained by Blanchard. It was in this state of the case that a portion of the creditors named in the schedule, assented to the pledge. But their assent, at that time, was as effectual against the claims of the plaintiffs, who acquired whatever rights they had afterwards, as if the same had been previously given. And Winkley never claimed the property as against the claims of those who thus assented after his attachment. The lien took effect, then, in behalf of all included in the schedule. But it is, nevertheless, claimed by the plaintiff that the lien of Blanchard, and of the other persons for whom he held the property, was abandoned and lost by reason of the attachment made by Blanchard of the goods in question. Blanchard caused a writ to be made, and the same to be given to an officer, intending to have an attachment made, and one was made, so far as it could be done under the circumstances.

Blanchard did not intend an abandonment of his lien already existing, and he did not surrender the possession to the officer, nor did he ever receipt for the goods. Blanchard states in his disclosure that his object and purpose was to effect a further security, and not to abandon his lien, and that he was advised that the proceeding, such as it was intended to be, would not occasion a loss of the security. And it appears that Eldridge, the officer who made the attachment for Winkley and the plaintiff, never claimed the property as against the lien of Blanchard, either by virtue of Winkley or Blanchard's writ, and that the property was finally sold by the officer, with the assent of all concerned, Blanchard assenting only to a sale, subject to his rights under the pledge; and Danforth & Co. at the time claiming only that Blanchard could not hold for those who assented to the pledge subsequently to the service of Winkley's writ. Was the lien of Blanchard lost by this transaction? We will not stop to inquire whether Blanchard could, by any act of his in attaching the property and surrendering it to the officer, discharge the lien of the other creditors for whom

he held the goods.   It would seem at least unreasonable to
hold, that by such an act in his own behalf the agent could
in any way affect the rights of his principals.   But we will
consider the effect of his acts as affecting his own claim to
the property.

If the transaction or contract created a pledge, and there
was a voluntary surrender of the property and the pos-
session of it, or what is equivalent to it, the lien of Blanch-
ard was lost.   This is the most favorable view for the plain-
tiff.   Possession, taken and retained, is necessary to the crea-
tion and maintenance of a valid pledge.   And a voluntary
surrender of the possession will work a loss of the lien.   But a
wrongful dispossession of the pledgee will not destroy the
lien.   In this case, Blanchard took actual possession, and
never surrendered it.   Nor does it seem to have been claim-
ed by Eldridge, the officer.   And he never intended to aban-
don his lien.   And we are of opinion that nothing was done
by Blanchard whereby his lien was lost.   As to his own
writ, it could have no such effect as is claimed for it.   El-
dridge could have no other authority in the service of it than
as his agent, appointed by the law.   He did not take pos-
session of the property, but only got such rights as could be
taken while Blanchard kept possession, and intended to re-
tain his lien.   It would hardly seem necessary to do more
than to state the case, to show that by Blanchard's process
and the acts done under it, accompanied with the inten-
tions of the parties that are shown to have existed, his pledge
was not lost.

*Townsend* v. *Newell,* 14 Pick. 332, is a case much in
point, upon the question of the effect of the several attach-
ments upon the claim of the trustee.   In that case, goods
in the possession of a party having a manufacturer's lien
upon them, were attached, and the party receipted for them
to the officer; but at the same time it was agreed that he
should retain for his lien, and afterwards the goods were
attached at the suit of the manufacturer, and he receipted

for them, still asserting his lien. And it was decided that the lien was not discharged. The court, in that decision, remark : " Charles sued out a writ against John Townsend, and attached the goods, and Rice receipted for them to the officer. But Rice claimed a special property in them at the time, and it was manifest that he did not intend to give up any right, but that he agreed to receipt, retaining his lien. We think that the lien was not discharged by these proceedings. It is further objected that Rice caused the goods to be attached on his own account, and again receipted for them. It seems doubtful whether his writ was designed to cover both of his demands against John Townsend; but however this may be, it was clearly his intention to retain his lien, and we are satisfied he did not discharge it by his attachment and receipt."

The principle of that decision would seem fully to establish the position of the trustee, that the pledge remained valid, notwithstanding the attachments detailed in his disclosure. It is most distinctly stated in his disclosure, that he had at no time the purpose of abandoning his lien by virtue of the pledge, but at all times intended to retain it, and refused to give it up. And that account of the matter is fully confirmed by the affidavits of the officer who served the writs and made sale of the property, subject to the claims of the trustee. We quite concur with the views of the court in the decision of *Townsend* v. *Newell*, and regard them as applicable to the present case. Moreover, it may be remarked that in the present case there was no voluntary surrender of the possession of the pledge, nor, in fact, any surrender at all. Nor was anything done or assented to inconsistent with the continuance of the lien. It was expressly agreed that the lien should not be lost. Nothing, then, that was done, was intended, or could operate, to discharge it.

*Trustee discharged.*